1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF CALIFORNIA

7

8   EDWARD E. HARRIS,                )
                                     )        2:08-cv-0098-GEB-CMK
9            Plaintiff,              )
                                     )        ORDER*
10      v.                           )
                                     )
11  BARBARA DILLMAN, individually and )
    as Superintendent of Schools for  )
12  the Siskiyou County Office of     )
    Education; the SISKIYOU COUNTY    )
13  OFFICE OF EDUCATION; TIMOTHY      )
    PAPPAS, individually and as Deputy )
14  District Attorney in the Office of )
    the Siskiyou County District      )
15  Attorney; PETER F. KNOLL and KIRK )
    ANDRUS, both individually, and as )
16  District Attorneys for the County )
    of Siskiyou and the County of     )
17  Siskiyou, a political subdivision, )
                                     )
18           Defendants.             )
                                     )
19  _____ )

20           Two separate motions are pending.  On June 19 2008,

21  Defendants Timothy Pappas ("Pappas"), Peter F. Knoll ("Knoll"), Kirk

22  Andrus ("Andrus") and the County of Siskiyou (the "County") filed a

23  motion to dismiss Plaintiff Edward E. Harris' Second Amended

24  Complaint.  On June 20 2008, Defendants Barbara Dillman ("Dillman")

25  and the Siskiyou County Office of Education ("SCOE") filed a motion to

26  dismiss Plaintiff's Second Amended Complaint.  All Defendants move

27  _____

28      *    This matter was determined to be suitable for decision
    without oral argument.  L.R. 78-230(h).

1

1 for a more definite statement under Rule 12(e).  Plaintiff opposes the
2 motions.

3                    PLAINTIFF'S FACTUAL ALLEGATIONS[1]

4          Plaintiff was superintendent of a Siskiyou County elementary
5 school beginning in 2001.  (Sec. Am. Compl. ("SAC") ¶ 10.)  Dillman,
6 who was Superintendent of Schools for Siskiyou County and responsible
7 for administering SCOE, launched a campaign around 2001 to create an
8 "educational consortium."  (Id. ¶¶ 11-14.)  Plaintiff publicly opposed
9 the consortium and announced his intention to run against Dillman for
10 the office of superintendent in the 2002 election.  (Id. ¶ 16.)

11         Dillman met with Knoll, who was district attorney for the
12 County, and Pappas, a deputy district attorney for the County, one or
13 more times prior to the 2002 election.  (Id. ¶ 17.)  At those
14 meetings, Knoll and Pappas committed to Dillman that they would use
15 their office to "silence [P]laintiff's opposition to Dillman's
16 consortium and thwart his election."  (Id.)  They agreed they would
17 "throw stuff" at Plaintiff until "something stuck."  (Id.)

18         Knoll and Pappas "implemented the secret agreement between
19 them and Dillman" by seizing on an allegation of an underage student
20 employee that she had been "annoyed and molested by an email" she
21 believed originated with Plaintiff.  (Id. ¶ 18.)  Pappas and Knoll
22 failed to investigate the student's allegations, or the possibility
23 that the email originated in Dillman's office.  (Id.)  Pappas, Knoll,
24 and Dillman "wrongfully and deliberately" released information to the

25

26         [1]    Since defendants seek dismissal under Federal Rule of
27 Civil Procedure 12(b)(6), "[a]ll allegations of material fact in
   the complaint are taken as true and construed in the light most
28 favorable to the plaintiff."  Williams ex rel. Tabiu v. Gerber
   Prods. Co., 523 F.3d 934, 937 (9th Cir. 2008).

public about the email and the student's allegations. (<u>Id.</u> ¶ 19.)  As
a result of the allegations that Plaintiff sent the email, he was
placed on unpaid administrative leave and his teaching credential was
suspended. (<u>Id.</u> ¶¶ 20-21.)

In April 2002, Pappas, at the request of Dillman, publicized
a claim that plaintiff had embezzled funds from the school district.
(<u>Id.</u> ¶ 23.)

In September 2002, Plaintiff's teaching credential was
restored and he accepted a position as superintendent of Willow Creek
Elementary School District. (<u>Id.</u> ¶ 24.)  Dillman subsequently
"publicly announc[ed] she would personally end [P]laintiff's career in
education." (<u>Id.</u> ¶ 25.)  In November 2004, Dillman filed a civil
action against Plaintiff and his employer, the school district,
alleging Plaintiff had falsified school attendance figures and had
opposed joining Dillman's consortium. (<u>Id.</u> ¶ 26.)  The case was
dismissed with prejudice on April 10, 2006, after the school spent
$76,696 in legal fees. (<u>Id.</u>)

Plaintiff continued to publicly oppose Dillman's consortium
proposal between 2002 and 2006. (<u>Id.</u> ¶ 27.)  Dillman "responded by
engaging in a continuous pattern of malicious interference" toward
Plaintiff that ultimately caused him to resign from his position in
April 2006. (<u>Id.</u>)  Dillman then reported to the County grand jury
that while Plaintiff was superintendent of Willow Creek Elementary
School District, he submitted false attendance reports, opposed
joining Dillman's consortium, and spent $76,696 in legal fees which
did not benefit the district. (<u>Id.</u> ¶ 28.)  Dillman's statements to
the grand jury "were made with the knowledge and acquiescence of

Andrus," who had replaced Knoll as the County district attorney.  (Id.)

The grand jury requested that Andrus launch a criminal investigation of Plaintiff's conduct. (Id. ¶ 29.)  Andrus knew that Dillman's statements to the grand jury arose out of the "secret conspiracy" between Dillman, Knoll, and Pappas, but Andrus responded to the grand jury in writing in November 2006 that he "agreed in part" with the grand jury's findings regarding Plaintiff. (Id. ¶ 30.)

Plaintiff's attorney sent a letter to Andrus on January 5, 2007, "to secure evidence for prospective employers that [P]laintiff was not faced with a threat of prosecution. (Id. ¶ 33.)  Andrus responded that Plaintiff was "not out of the woods yet." (Id. ¶ 34.) This response was the first act to put "[P]laintiff on notice that Andrus and his predecessors . . . were knowingly part of a common plan or design with Dillman to use the office of the District Attorney" to commit wrongful acts against Plaintiff. (Id. ¶ 35.)

Further, Plaintiff believes that there are "significant irregularities" involving the consortiums's use of public funds. (Id. ¶ 37.)  The District Attorney's office has failed to investigate possible problems. (Id.)  Dillman, her successor Kermith Walters, and the District Attorney's office have discouraged and intimidated anyone from investigating the irregularities. (Id.)  When another district official opposed the consortium, Dillman again filed a civil action and took action to suspend the official's credential. (Id.)

In November 2007, Plaintiff interviewed for a position in the Siskiyou Modoc Regional Department of Child Support Services. (Id. ¶ 38.)  He was offered the position, but prior to his start date, Andrus contacted the agency and "directed it not to hire" Plaintiff. (Id. ¶¶ 38-39.)

1        Plaintiff alleges three claims in his Second Amended

2 Complaint: (1) a 42 U.S.C. § 1983 claim, in which Plaintiff alleges

3 Dillman, the SCOE, Pappas, Knoll, and Andrus conspired to retaliate

4 against him for exercising his First Amendment free speech right when

5 he opposed Dillman's consortium proposal; (2) a California

6 interference with prospective economic advantage claim against

7 Dillman, SCOE, and Andrus; and (3) a California defamation claim

8 against Dillman, Pappas, Knoll, and Andrus.

9                   DISCUSSION[2]

10 I.  Dillman and SCOE Motion to Dismiss

11        Dillman and SCOE seek dismissal of all claims against

12 Dillman in her official capacity and all claims against SCOE, arguing

13 the claims are barred by Eleventh Amendment Immunity.  Plaintiff

14 counters that unlike a public school district, a county office of

15 education is not entitled to immunity under the Eleventh Amendment.

16 (Pl. Opp'n at 4:10-14.)[3]

17        In California, a "county office of education [is a] state

18 agenc[y] for purposes of Eleventh Amendment sovereign immunity."

19 Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1121 (9th

20 Cir. 2007).  Similarly, a superintendent of a county office of

21 education, such as Dillman, sued in his or her official capacity is

22 likewise entitled to Eleventh Amendment immunity.  See Eaglesmith v.

23 Ward, 73 F.3d 857, 859-860 (9th Cir. 1995.)  Accordingly, Defendants'

24 

25     [2]   The Rule 12(b)(6) dismissal standards are well known
and need not be repeated.

26 

27    [3]In this court's June 6, 2008 Order, Defendant's motion to
dismiss was granted; the court held that Dillman, sued in her
official capacity, and SCOE were entitled to immunity under the

28 Eleventh Amendment and therefore dismissed all claims against
Dillman in her official capacity and SCOE.

1  motion to dismiss all official capacity claims against Dillman and all

2  claims against SCOE is granted without leave to amend.

3  II.  Pappas, Knoll, Andrus, and County Motion to Dismiss

4      A.  Section 1983 Claims

5          Pappus, Knoll and Andrus seek dismissal of Plaintiff's §

6  1983 claim, arguing the claim is barred by the statute of limitations

7  and that they are immune from liability under prosecutorial immunity.

8  (D. Mot. (docket 25) at 16:16-17; 18:23-24.)[4]

9          Plaintiff counters the claim survives Defendants' dismissal

10 motion because he relies on a continuing civil conspiracy theory of

11 liability. (Pl. Opp'n (docket 33) at 3:15-21.)  "To [allege] a

12 continuing violation a plaintiff has to [allege] a series of related

13 acts, one or more of which falls within the limitations period . . ."

14 (internal citations omitted) Green v. Los Angeles County

15 Superintendent of Schools, 883 F.2d 1472, 1480 (9th Cir. 1989).

16 Plaintiff alleges that a 2007 letter from Andrus in which Andrus

17 stated, "Mr. Harris is not out of the woods yet [] was the first overt

18 act that put plaintiff on notice that [] Andrus and his predecessors

19 Knoll and Pappas were knowingly part of a common plan or design with

20 Dillman to use the Office of District Attorney, its deputies and

21 investigators to commit wrongful acts that caused plaintiff damage."

22 (SAC ¶¶ 34-35.)

23          Plaintiff alleges that while he learned of the conspiracy in

24 2007, the conspiracy began before the 2002 election when Knoll and

25 Pappas met with Dillman and "committed to . . . use the Sikiyou County

26 _____

27     [4]Although the motion also seeks dismissal of the County, the
   County is not named as a defendant in this claim; therefore,
28 arguments regarding County liability under § 1983 are
   disregarded.

District Attorney's office to silence [P]laintiff's opposition [and to] 'throw stuff' at [P]laintiff . . . until 'something stuck'." (<u>Id.</u> ¶ 17.)  Plaintiff alleges that in subsequent years, the conspiracy was furthered by Knoll and Pappas when they used a false claim against Plaintiff made by an underage student and released it to the public; Pappas publicized claims that Plaintiff embezzled funds from a school district; and Andrus cooperated in Dillman's civil action against Plaintiff (Pl. Opp'n at 4:1-19.)  Plaintiff's conspiracy allegations are sufficient to withstand a dismissal motion based on the statute of limitations.

Defendants further argue prosecutorial immunity bars Plaintiff's § 1983 claim.  Plaintiff counters, the "Second Amended Complaint contains numerous additional allegations of misconduct beyond the scope of prosecutorial immunity." (Pl. Opp'n at 7:5-6.) While "[p]rosecutors are absolutely immune from liability under § 1983 for their conduct insofar as it is intimately associated with the judicial phase of the criminal process, [when they perform administrative or investigative functions] only qualified immunity is available . . ." <u>Botello v. Gammick</u>, 413 F.3d 971, 975-976 (9th Cir. 2005) (internal citations omitted).  "The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question." <u>Id.</u> at 976.  Defendants have not sustained their burden of showing that the claim is barred by absolute prosecutorial immunity.

B.  Interference with Prospective Economic Advantage

Andrus and the County seek dismissal of Plaintiff's interference with prospective economic advantage claim, arguing that Plaintiff failed to comply with the California Tort Claims Act.  (D.

1  Mot. (docket 25) at 14:13-23.)  "The California Tort Claims Act
2  requires, as a condition precedent to suit against a public entity,
3  the timely presentation of a written [tort] claim and the rejection of
4  the claim in whole or in part."  Mangold v. Cal. Pub. Utils. Comm'n,
5  67 F.3d 1470, 1477 (9th Cir. 1995).  Plaintiff "concedes County's
6  interference with employment occurred after the amended tort claim was
7  filed on June 5, 2007 and this ancillary state claim is barred."  (Pl.
8  Opp'n at 2:10-12.)  Therefore, these Defendants' motion to dismiss
9  Plaintiff's interference with prospective economic advantage claim is
10 granted and the claim is dismissed with leave to amend.

11      C.   Defamation Claims

12      Defendants Pappas, Knoll, and Andrus seek dismissal of
13 Plaintiff's defamation claim, arguing Plaintiff failed to comply with
14 the California Tort Claims Act.  (D. Mot. (docket 25) at 14-15:25-1.)
15 "Under the California Tort Claims Act, no suit . . . may be brought
16 against a public entity until a written claim has been presented to
17 the public entity and the claim has either been acted upon or is
18 deemed to have been rejected."  Neveau v. City of Fresno, 392
19 F.Supp.2d 1159, 1173 (E.D. Cal. 2005).  In his claim for defamation,
20 Plaintiff has plead neither presentment nor rejection of his claim to
21 the public entity in compliance with the California Tort Claims Act.
22 Accordingly, these Defendants' motion to dismiss Plaintiff's
23 defamation claim is granted and the defamation claim is dismissed with
24 leave to amend.

25 III.  Motions for a More Definite Statement

26      Defendants Dillman and SCOE move for a more definite
27 statement of Plaintiff's defamation claim, specifically requesting
28 Plaintiff to "identify whether recovery [in his defamation claim] is

1 sought as libel, libel per se, or slander [and] identify to whom

2 statements were made." (D. Mot. (docket 26) at 4:1-4.)   "There are

3 minimum requirements for [pleading] a defamation claim such as the

4 identification and substance of the complained of statements, to whom

5 the statements were made, and whether the statements were heard by

6 third parties." (citation omitted) <u>Coffman v. USA</u>, 2007 WL 1598635 *1

7 (W.D. Okla. 2007). <u>See</u> <u>Pai Corp. V. Integrated Sci. Solutions Inc.</u>,

8 2007 WL 1229329 *8-9 (N.D. Cal. 2007.)   Accordingly, Defendants'

9 motion is granted and Plaintiff shall clarify the type of defamation

10 alleged and provide information as to whom the statements were made.

11         Defendants Pappas, Knoll, Andrus and the County seek a more

12 definite statement of the duties of Andrus to Plaintiff, the purpose

13 of the alleged conspiracy, and specific facts to support the existence

14 of a conspiracy.   This motion is denied because Defendants have not

15 shown that those allegations are "so vague or ambiguous that [they]

16 cannot reasonably be required to frame a responsive pleading . . ."

17 Fed. R. Civ. P. 12(e).

18                                   SUMMARY

19         Defendants Dillman and SCOE's motion to dismiss all official

20 capacity claims against Dillman and all claims against SCOE is granted

21 without leave to amend.   Defendant Dillman's motion for a more

22 definite statement of Plaintiff's defamation claim is granted.

23         Defendants Pappas, Knoll, Andrus, and the County's motion to

24 dismiss to Plaintiff's state claims for defamation and interference

25 with prospective economic advantage is granted with leave to amend.

26 Defendants' motions to dismiss Plaintiff's § 1983 claim and for a more

27 definite statement of that claim are denied.

28 / / /

1    If Plaintiff can cure the deficiencies in these claims, he

2  may file an amended complaint in which he may amend the claims he has

3  been granted leave to amend; said claims may be amended within ten

4  days after this Order is filed.

5  Dated:  October 2, 2008

6

7    _____
   GARLAND E. BURRELL, JR.

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28