IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD E. HARRIS,                )
                                 )        2:08-cv-0098-GEB-CMK
              Plaintiff,         )
                                 )
         v.                      )        ORDER GRANTING EACH
                                 )        DEFENDANT'S MOTION FOR
BARBARA DILLMAN, individually;   )        SUMMARY JUDGMENT ON
TIMOTHY PAPPAS, individually and )        PLAINTIFF'S FEDERAL CLAIM AND
as Deputy District Attorney in   )        DECLINING TO EXERCISE
the Office of the Siskiyou       )        SUPPLEMENTAL JURISDICTION
County District Attorney; PETER  )        OVER PLAINTIFF'S REMAINING
F. KNOLL and KIRK ANDRUS, both   )        STATE LAW CLAIM[**]
individually, and as District    )
Attorneys for the County of      )
Siskiyou,                        )
                                 )
              Defendants.[*]     )
                                 )
_____)

          Defendants Timothy Pappas, Peter Knoll and Kirk Andrus

(collectively, the "District Attorney Defendants") moved for summary

judgment on Plaintiff's remaining claims alleged in his third amended

complaint.  (Docket No. 59.)  These Defendants also moved in the

---

     [*]    The caption has been amended to reflect the dismissal of the
County of Siskiyou.  (Docket No. 48.)

     [**]   The motions are deemed suitable for decision without oral
argument.  E.D. Cal. R. 230(g).

1

1  alternative for summary adjudication under Federal Rule of Civil
2  Procedure 56(b).  The District Attorney Defendants' motion was
3  scheduled to be heard on April 19, 2010.  Plaintiff filed an untimely
4  opposition in which he requested an order "vacating [the] hearing
5  date" and "extending the discovery cutoff" date under Federal Rule of
6  Civil Procedure 56(f).[1]  (Pl.'s Memo. of P. & A. in Supp. of Mot. for
7  Order Denying Defs.' Summ. J. Mot. 7.)  Defendant Barbara Dillmann
8  separately moved for summary judgment after the District Attorney
9  Defendants filed their motion.[2]  (Docket No. 68.)  Plaintiff did not
10 file an opposition to Dillmann's motion.

11        For the reasons stated below, Plaintiff's request for a
12 continuance under Federal Rule of Civil Procedure 56(f) will be denied
13 and each Defendant's summary judgment motion on Plaintiff's federal
14 claim will be granted.  However, the portion of each motion seeking
15 summary judgment on Plaintiff's state claim will not be decided
16 because the Court declines to continue exercising supplemental
17 jurisdiction over that claim and it will be dismissed without
18 prejudice under 28 U.S.C. § 1367(c)(3).

19          **I.  PLAINTIFF'S RULE 56(F) REQUEST**

20        Plaintiff argues the District Attorney Defendants' motion
21 should be denied, or alternatively, that the hearing date should be

22

23 ───────────────

24        [1]    Plaintiff did not file his opposition requesting relief under
   Rule 56(f) until April 12, 2010, only seven days prior to the previously
25 scheduled April 19, 2010 hearing date. Under the Eastern District's
   Local Rule 230(c), any opposition "to the granting of [a] motion shall
26 be in writing and *shall be filed and served not less than fourteen (14)*
   *days preceding the noticed . . . hearing date.*" E.D. Cal. R. 230(c)
27 (emphasis added).

28        [2]    Defendant Dillmann argues her name has been misspelled in
   Plaintiff's complaint.

1  vacated and the discovery cutoff date extended under Federal Rule of
2  Civil Procedure 56(f) ("Rule 56(f)").  Plaintiff contends if his
3  continuance request is granted, he will "complete depositions of
4  defendants Dillman[n,] . . . Pappas, Knoll and Andrus" and "will also
5  take the deposition of Captain John Villani of the Siskiyou Count[y]
6  Sheriff's office."  (Pl.'s Memo. of P. & A. in Supp. of Mot. for Order
7  Denying Defs.' Mot. for Summ. J. 2:3-9.)  Plaintiff argues relief
8  under Rule 56(f) is warranted because counsel for the District
9  Attorney Defendants "interfer[ed] with plaintiff in setting
10 depositions and securing discoverable documents . . . ."  (Id. 2:10-
11 12.)  Plaintiff also argues his Rule 56(f) request should be granted
12 because at Gina Villani's April 1, 2010 deposition, it was "revealed
13 that [Gina's father,] Captain John Villani of the Siskiyou County
14 Sheriff's Department[,] was a critical link between Pappas and Andrus
15 and Dillmann."  (Id. 3:24-26.)  Plaintiff contends that "Captain
16 Villani must also be deposed."  (Id. 4:6-7.)

17      Plaintiff's argument that he needs more discovery to oppose
18 the motion disregards the discovery completion date in the scheduling
19 order.  The Rule 16 scheduling order issued in this case prescribes
20 that the parties were to "complete" discovery by April 2, 2010,
21 seventeen days prior to the scheduled April 19, 2010 hearing date for
22 the District Attorney Defendants' summary judgment motion.  The
23 scheduling order explains: "In this context, 'completed' means that
24 all discovery shall have been conducted so that all depositions have
25 been taken and any disputes relative to discovery shall have been
26 resolved by appropriate orders, if necessary, and, where discovery has
27 been ordered, the order has been complied with or, alternatively, the
28 time allowed for such compliance shall have expired."  (Docket No. 29

1   at 2.)  Since Plaintiff's Rule 56(f) request seeks additional

2   discovery after the passing of the discovery completion date,

3   amendment of the Rule 16 scheduling order is a prerequisite to

4   granting Plaintiff's Rule 56(f) request.  See In re Imperial Credit

5   Indus., Inc. Secs. Lit., 252 F. Supp. 2d 1005, 1017 (C.D. Cal. 2003)

6   (stating that "[t]o grant Plaintiffs' Rule 56(f) request would . . .

7   require the Court to extend the discovery cut-off in this action and

8   thus modify the scheduling order").

9        Under Rule 16(b), "[t]he district court may modify the

10  pretrial schedule if it cannot reasonably be met despite the diligence

11  of the party seeking the extension." Johnson v. Mammoth Recreations,

12  Inc., 975 F.2d 604, 608 (9th Cir. 1992).  Since Rule 16(b)'s good

13  cause standard focuses on the diligence of the party seeking

14  amendment, "[i]f th[e] party was not diligent, the inquiry should end"

15  and the request for modification of the scheduling order denied.  Id.

16       Therefore, before deciding whether to consider the merits of

17  Plaintiff's Rule 56(f) motion, the issue is reached whether Plaintiff

18  has satisfied his burden of showing that "good cause" justifies

19  amending the discovery completion date prescribed in the Rule 16

20  scheduling order.  A district court is authorized to decline

21  considering a Rule 56(f) request, in the situation faced here, where

22  Plaintiff "should have [first] sought an extension of the discovery

23  cutoff date . . . but did not do so."  Saavedra v. Murphy Oil U.S.A.,

24  Inc., 930 F.2d 1104, 1107 (5th Cir. 1991)).

25       Plaintiff has not adequately explained why he did not

26  complete the discovery he now seeks before the discovery completion

27  date.  Although Plaintiff argues that the District Attorney

28  Defendants' counsel obstructed Plaintiff's discovery efforts,

Plaintiff fails to explain why he did not timely litigate this
referenced discovery dispute before the Magistrate Judge as required
by the scheduling order and the Eastern District's Local Rule
302(c)(1).  The district court is not required to consider a discovery
matter which Plaintiff "failed to [timely] prosecute . . . before the
magistrate judge as required by E.D. Cal. Local Rule [302(c)] and the
court's [scheduling] order."  <u>Freeman v. Allstate Life Ins. Co.</u>, 253
F.3d 533, 537 (9th Cir. 2001).  Plaintiff, therefore, has not shown
that good cause justifies amending the discovery completion provision
in the scheduling order.

        Moreover, even if the merits of Plaintiff's Rule 56(f)
request were decided, Plaintiff has not demonstrated he is entitled to
relief under Rule 56(f).  Rule 56(f) provides that "[i]f a party
opposing [summary judgment] . . . shows by affidavit that, for
specified reasons, it cannot present facts essential to justify its
opposition, the court may: (1) deny the motion; (2) order a
continuance to enable affidavits to be obtained, depositions to be
taken, or other discovery to be undertaken; or (3) issue any other
just order."  Fed. R. Civ. P. 56(f).  Therefore, to receive relief
under Rule 56(f), the moving party "must show (1) that [he] ha[s] set
forth in affidavit form the specific facts that [he] hope[s] to elicit
from further discovery, (2) that the facts sought exist, and (3) that
these sought-after facts are 'essential' to resist the summary
judgment motion."  <u>State of Cal. ex. rel. Cal. Dep't of Toxic
Substances Control v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1991).

        Plaintiff has neither identified "the specific facts [he]
hopes to elicit from further discovery", nor how the "sought-after
facts are essential to resist the summary judgment motion" or

demonstrated that such facts "exist." <u>Id.</u>  The transcript from Gina Villani's deposition provided by Plaintiff does not suggest that John Villani, if deposed, would provide evidence establishing a conspiracy among the Defendants.  Nor has Plaintiff explained why the other discovery he seeks is essential to his opposition to the summary judgment motion.

For the stated reasons, Plaintiff's request for an extension of the discovery completion date and for relief under Rule 56(f) is denied.

## II.  LEGAL STANDARD ON SUMMARY JUDGMENT

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, <u>specific</u> <u>facts</u> showing that there is a genuine issue for trial."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis in original).  This requires that the non-moving party "come forward with facts, and not allegations, [that] controvert the moving party's case."  <u>Town House, Inc. v. Paulino</u>, 381 F.2d 811, 814 (9th Cir. 1967) (citation omitted).  All reasonable inferences that can be drawn from the facts provided "must be drawn in favor of the non-moving party."  <u>Bryan v. McPherson</u>, 590 F.3d 767, 772 (9th Cir. 2009).

The Eastern District's Local Rule 260(b) further requires that "[a]ny party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of

Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." E.D. Cal. R. 260(b). "If the moving party's statement of facts are not controverted in this manner, the Court may assume the facts as claimed by the moving party are admitted to exist without controversy." Farrakhan v. Gregoire, 590 F.3d 989, 1002 (9th Cir. 2010) (quoting Beard v. Banks, 548 U.S. 521, 527 (2006)) (finding that a party opposing summary judgment who "fail[s] [to] specifically challenge the facts identified in the [moving party's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts . . . .").

### III.   STATEMENT OF UNCONTROVERTED FACTS

Plaintiff Edward Harris was the principal of Weed High School in the Siskiyou Union High School District from 1999 through 2001. (Dillmann Statement of Undisputed Facts ("SUF") ¶ 3.) In July 2001, the Big Springs Union Elementary School District hired Plaintiff as its district superintendent and principal of the Big Springs Elementary School. (Id. ¶ 9.)

Defendant Peter Knoll was the District Attorney for Siskiyou County from January 1991 until December 30, 2004, when he retired. (District Attorney Defs.' SUF ¶¶ 1-2.) Defendant Timothy Pappas was the Assistant District Attorney for Siskiyou County from December 1, 1999 until November 1, 2004. (Id. ¶ 22.) Defendant Kirk Andrus was appointed Siskiyou County District Attorney on April 11, 2005. (Id. ¶¶ 10-11.) Defendant Barbara Dillmann served as the superintendent of

1  the Siskiyou County Office of Education from January 1999 until
2  January 2007.  (Dillmann SUF ¶ 1.)

3         On July 31, 2001, the Siskiyou County District Attorney's
4  Office filed a misdemeanor complaint against Plaintiff in connection
5  with allegations made by Gina Villani that Plaintiff had sent her
6  "sexually charged" emails while she was employed by the Big Springs
7  Elementary School.  (Id. ¶ 18.)  Subsequently, on April 9, 2002, the
8  Siskiyou County District Attorney's Office filed a felony complaint
9  against Plaintiff, which added a "while collar" charge to the
10 allegations in the misdemeanor complaint.  (Id. SUF ¶ 19.)  This
11 felony complaint superseded the misdemeanor complaint.  (Pappas Decl.
12 ¶ 32.)  Defendant Assistant District Attorney Pappas declares his
13 "prosecution of the criminal felony complaint against [Plaintiff]
14  . . . was based solely on the investigative reports provided to [him]
15 by the District Attorney investigators assigned to the case."  (Pappas
16 Decl. ¶ 35.)  However, Defendant District Attorney Knoll decided to
17 "dismiss the criminal action [against Plaintiff] because of a civil
18 compromise [Plaintiff] . . . had entered into with the Big Springs
19 Union Elementary School District."  (Knoll Decl. ¶ 29.)

20        Subsequently, the Willow Creek Elementary School District
21 hired Plaintiff in September 2002 to be the district superintendent
22 and principal of the Willow Creek Elementary School.  (Dillmann SUF ¶
23 28.)  Thereafter, in February 2003, after an investigation into
24 allegations of misconduct, the California Commission on Teacher
25 Credentialing recommended that Plaintiff's educational credentials be
26 revoked.  (Dillmann SUF ¶ 29.)  On January 30, 2004, the California
27 Commission on Teaching Credentialing filed an "amended accusation"
28 against Plaintiff, alleging that Plaintiff was unfit to be an educator

because he had "engaged in immoral conduct, . . . unprofessional conduct, has committed acts involving moral turpitude, and has demonstrated evident unfitness for service . . . ."  (Kelley Decl. Ex. E.)

In May 2004, Plaintiff entered into a consent determination with the California Commission on Teacher Credentialing.  (Dillmann SUF ¶ 31.)  Under the consent determination, Plaintiff's educational credentials were suspended effective July 1, 2005, and Plaintiff was precluded from seeking renewal at any time prior to July 1, 2007.  (Id.)  The consent determination further provided that if Plaintiff sought reinstatement of his credentials after July 1, 2007, all of the allegations alleged against him would be deemed true.  (Id.)  Thereafter, in June 2004, Plaintiff and the Willow Creek Elementary School District entered into a new employment contract and Plaintiff's title was changed from Superintendent to Chief Administrative Officer.  (Dillmann SUF ¶ 32.)

Defendant Dillmann, however, was "concerned [that] [Plaintiff] could not occupy the position of Chief Administrative Officer for the Willow Creek School District following the suspension of his credentials."  (Id. SUF ¶ 33.)  On November 18, 2004, Dillmann filed a writ of mandate against the Willow Creek School District, challenging Harris' employment.  (Id. ¶ 34.)  Harris and the Willow Creek School District then filed cross-complaints against Dillmann, alleging a claim of interference with contractual relations.  (Id. ¶ 35.)  This litigation, however, was resolved when Harris, Dillmann and the Governing Board of the Willow Creek School District entered into a settlement and release agreement in March 2006.  (Id. SUF ¶ 42.)

1 Plaintiff subsequently resigned from his position with the Willow
2 Creek School District.  (Id. ¶ 77.)

3      Defendant Dillmann met with the Siskiyou County Grand Jury
4 Education Committee on October 2, 2005, at their request and answered
5 their questions.  (Id. ¶¶ 39-40.)  In June 2006, the Siskiyou County
6 Grand Jury issued a report, in which it found that Willow Creek
7 Elementary School submitted false attendance information for the 2004
8 to 2005 school year.  (Id. SUF ¶ 36.)   The Grand Jury requested that
9 then District Attorney Defendant Andrus review the falsification of
10 attendance records with a criminal grand jury to see if criminal
11 prosecution was warranted.  (District Attorney Defs.' SUF ¶¶ 141,
12 143.)  Andrus responded to the Grand Jury in writing on November 9,
13 2006, concluding that "prosecution was not warranted and the District
14 Attorney's Office would do nothing further."  (Id. ¶¶ 146, 155.)

15      In 2007, Susan Pritchett, the Director of the Siskiyou-Modoc
16 Regional Department of Child Support Services, was looking to employ a
17 Child Support Specialist.  (Id. ¶¶ 167-68.)  Plaintiff applied for the
18 position and was interviewed by Pritchett.  (Id. ¶¶ 170-71.)  On
19 November 21, 2007, Robert Dunn, the Chief Investigator in the District
20 Attorney's Office, performed a "simple employment background check" on
21 Plaintiff at the request of the Siskiyou Modoc Regional Department of
22 Child Support Services.  (Id. ¶ 174.)  Pritchett then contacted Andrus
23 and requested that he perform a more formal background check.  (Id. ¶
24 176.)  Andrus sent an email to Pritchett advising her that the
25 District Attorney's Office would decline to perform any further
26 background investigation on Plaintiff.  (Id. ¶ 178.)  Upon receiving
27 Andrus' email, Pritchett forwarded it to Ann Waite.  (Id. ¶ 181.)
28 Based upon information received from Ann Waite, Pritchett decided not

1  to hire Plaintiff.  (Id. ¶ 183.)  Pritchett sent Plaintiff a letter

2  dated December 12, 2007, informing him of her decision not to hire

3  him.  (Id. ¶ 188.)

4                          **IV.  DISCUSSION**

5  **A.  Plaintiff's First Claim Alleged Under the First Amendment and 42**
                          **U.S.C. § 1983**

6

7          The District Attorney Defendants argue they are entitled to

8  summary judgment on Plaintiff's federal claim, in which Plaintiff

9  alleges Defendants conspired to retaliate against him for speaking on

10  matters of public concern.  These Defendants argue there is no

11  evidence of a conspiracy and, absent proof of a conspiracy, the

12  statute of limitations bars this claim.  Defendant Dillmann also

13  argues she is entitled to summary judgment on this claim since

14  Plaintiff has not  demonstrated a conspiracy or that Dillmann

15  "engaged in any act to stifle Plaintiff's protected speech."

16  (Dillmann Mot. for Summ. J. 15:1-2.)

17          Plaintiff alleges in this claim that he "publicly announced

18  his intention to run against Dillman[n] for the office of

19  Superintendent in the . . . 2002 election" and that he "publicly

20  expressed his opposition to Dillman[n]'s consortium."  (Third Amended

21  Compl. ("TAC") ¶ 14.)  Plaintiff further alleges that through this

22  activity, he "was exercising the right to free expression on a matter

23  of public concern under the First Amendment to the United States

24  Constitution."  (Id. ¶ 40.)  Plaintiff also alleges that "Dillman[n]

25  met with Knoll and Pappas . . . before the 2002 election" and Knoll

26  and Pappas "committed to Dillman[n] [that] they would use the Siskiyou

27  County District Attorney's office to silence [his] opposition to

28

1  Dillman[n]'s consortium and thwart his election campaign."  (<u>Id.</u> ¶

2  15.)

3       Plaintiff also alleges that "Defendants Pappas, Knoll,

4  Andrus and Dillman[n] all acted collectively and individually . . .

5  and in a . . . secret conspiracy with one another to . . . punish

6  plaintiff for exercising his right to free speech in opposing the

7  Dillman[n] consortium proposal and to discourage plaintiff from

8  running for election" against Dillmann.  (<u>Id.</u> ¶ 41.)  Plaintiff

9  alleges that "the Dillman[n] civil complaint, . . . Andrus['] . . .

10 cooperation in the frivolous Grand Jury complaint of 2006 . . . and

11 Andrus' deliberate interference with plaintiff's prospective

12 employment in December 2007 were all products of the agreement to

13 interfere with plaintiff's rights under the First and Fourteenth

14 Amendments."[3]  (<u>Id.</u> ¶ 42.)  Plaintiff's federal claim is premised on

15 allegations that Defendants violated his First Amendment rights by

16 conspiring to retaliate against him for his public opposition to

17 Dillmann's educational consortium and for his decision to run against

18 Dillmann in an election.

19       "A civil conspiracy is a combination of two or more persons

20 who, by some concerted action, intend to accomplish some unlawful

21 objective for the purpose of harming another which results in damage."

22 <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856 (9th Cir. 1999)

23 (quoting <u>Vieux v. East Bay Reg'l Park Dist.</u>, 906 F.2d 1330, 1343 (9th

24 Cir. 1990)).  "To prove a civil conspiracy, the plaintiff must show

25 _____

26       [3]   Plaintiff also alleges Defendants "all collaborated in a
   continuous course of conduct specifically intended to deny plaintiff due
27 process and equal protection of the laws."  (TAC ¶ 42.)   These
   conclusory allegations, however, are insufficient to state either a
28 constitutional due process or equal protection claim and are therefore
   dismissed.

that the conspiring parties reached a unity of purpose or a common

design and understanding, or a meeting of the minds in an unlawful

arrangement.  To be liable, each participant in the conspiracy need

not know the exact details of the plan, but each participant must at

least share the common objective of the conspiracy." Id. (quotations

and citations omitted).

Defendants Knoll, Pappas, Andrus and Dillmann have each

provided a declaration that rebuts Plaintiff's allegations of the

existence of a conspiracy.  Defendants, therefore, have shifted the

burden to Plaintiff to come forward with admissible evidence from

which the existence of a conspiracy could reasonably be inferred.

Plaintiff, however, has presented no evidence from which it can

reasonably be inferred that there was a conspiracy among the

Defendants to retaliate against him for any protected First Amendment

activity.  Therefore, each Defendant's motion for summary judgment on

this claim is GRANTED.

**B.  Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claim**

Since only Plaintiff's state claim for interference with

prospective advantage remains, the Court may consider whether to

continue exercising supplemental jurisdiction over this claim.  See

Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en

banc) (suggesting that a district court may, but need not, sua sponte

decide whether to continue exercising supplemental jurisdiction under

28 U.S.C. § 1367(c)(3) after all federal law claims have been

resolved).

Under 28 U.S.C. § 1367(c)(3), a district court "may decline

to exercise supplemental jurisdiction over a [state law] claim" when

1  "all claims over which it has original jurisdiction" have been
2  dismissed.  "While discretion to decline to exercise supplemental
3  jurisdiction over state law claims is triggered by the presence of one
4  of the conditions in § 1367(c), it is informed by the . . . values of
5  economy, convenience, fairness, and comity."  Acri, 114 F.3d at 1001
6  (quotations omitted).  "In the usual case in which all federal-law
7  claims are eliminated before trial, the balance of [the] factors to be
8  considered . . . point toward declining to exercise jurisdiction over
9  the remaining state-law claims."  United Mine Workers of Am. v. Gibbs,
10 383 U.S. 715, 726 (1966).  "Further, primary responsibility for
11 developing and applying state law rests with the state courts."
12 Curiel v. Barclays Capital Real Estate Inc., No. S-09-3074 FCD/KJM,
13 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010); see also Gibbs, 282
14 U.S. at 726 (stating that "[n]eedless decisions of state law should be
15 avoided").

16     Although this case is scheduled for trial on November 9,
17 2010, an earlier filed case is scheduled for trial at the same time,
18 and that case will proceed to trial before this case.  In light of the
19 court's congested trial calendar, it is unclear when this case could
20 be tried.  Moreover, "[t]here is no prevailing reason for this court
21 to maintain jurisdiction to preserve judicial economy."  Meza v.
22 Matrix Serv., No. CIV. 2:09-3106 WBS JFM, 2010 WL 366623, at *4 (E.D.
23 Cal. Jan. 26, 2010); see also Otto v. Heckler, 802 F.2d 337, 338 (9th
24 Cir. Cir. 1986) (stating that "[t]he district court, of course, has
25 the discretion to determine whether its investment of judicial energy
26 justifies retention of jurisdiction").

27     Therefore, the Court declines to continue exercising
28 supplemental jurisdiction over Plaintiff's remaining state claim, and

1  that claim will be dismissed without prejudice under 28 U.S.C. §

2  1367(c)(3).

3                           **V.   CONCLUSION**

4          For the reasons stated above, each Defendant's motion for

5  summary judgment on Plaintiff's federal claim is GRANTED and

6  Plaintiff's remaining state claim is dismissed without prejudice under

7  28 U.S.C. § 1367(c)(3).

8  Dated:   September 2, 2010

9

10  _____
    GARLAND E. BURRELL, JR.

11  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28